[Civ. No. 4085. Second Appellate District, Division One.—February 13, 1923.]

ROBERT REINDERS, a Minor, etc., Respondent, v. WILLIAM OLSEN, Appellant.

[1] NEGLIGENCE — WHEN QUESTION OF LAW. — It is only when there is no dispute as to the facts and reasonable men can reach but one conclusion—that of plaintiff's lack of ordinary care in the circumstances which contributed directly or proximately to the accident of which he complains—that the judge is warranted in deciding that fact in place of the jury and declaring therefrom ·as a matter of law that plaintiff shall not be permitted to recover damages.

[2] ID.—COLLISION BETWEEN MOTORCYCLE AND AUTOMOBILE—EVIDENCE— QUESTION FOR JURY.—In this action to recover damages for personal injuries sustained in a collision between a motorcycle upon which plaintiff was riding and an automobile operated by defendant, the evidence presented a question of fact as to plaintiff's negligence which was at least fairly debatable, and therefore no error was committed in denying the motion for a nonsuit.

[3] INSTRUCTIONS—APPEAL—WHEN NOT REVIEWABLE.—An appellant is in no position to complain of an instruction in his favor.

[4] ID.—ERROR OF APPELLANT—EFFECT OF.—While the general rule is that instructions should be based on the evidence and not on facts of which there is no evidence, where it appears that such an error was partly, if not entirely, caused by the party complaining, he can be afforded no relief.

[5] ID.—CONSIDERATION OF INSTRUCTIONS AS A WHOLE.—Instructions must be considered as a whole, and where matter omitted from a particular instruction is covered in other instructions, no error is committed.

[6] NEGLIGENCE — COLLISION OF MOTOR VEHICLES — USE OF WRONG SIDE OF STREET AT INTERSECTION—CUSTOM—EFFECT OF.—In an action for damages for personal injuries sustained in a collision between a motorcycle upon which plaintiff was riding and an automobile operated by defendant, a custom or practice of automobile drivers to use the wrong side of the street at the intersection where the collision occurred is not binding on the plaintiff so as to excuse defendant from violating the statute in that regard, provided such act was the proximate cause of the accident.

[7] ID.—POSITION OF PERIL—COURSE OF ACTION.—The law does not demand that one placed in great peril by the negligence of another shall make the best possible choice.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Thomas and B. P. Gibbs for Appellant.

D. A. Stuart for Respondent.

HOUSER, J.—Plaintiff, by his guardian, brought action against defendant to recover damages for personal injuries sustained in a collision between a motorcycle upon which plaintiff was riding and an automobile operated by defendant. The principal undisputed facts appear to be as follows: At about 8 o'clock P. M. of August 27, 1920, plaintiff was riding his motorcycle eastward on Third Street in the city of San Pedro, approaching the intersection of Third Street with Bandini Street, the former extending east and west and the latter north and south, the two streets intersecting at right angles. A single street-car track was located about the center of Bandini Street, the rails being slightly above grade at the street intersection. Neither of the streets was paved and each of them was somewhat rough. When plaintiff was a considerable distance from the intersection of the two streets he was traveling at a rate of about twenty miles an hour, but when within one block of the intersection the speed of his motorcycle was slowed to about ten or twelve miles an hour, and so continued until the accident upon which this action is based occurred. The headlights of each of the vehicles were burning brightly and were plainly visible to the respective operators of the two vehicles. Just before the accident occurred defendant had been traveling west on Third Street and plaintiff was at all times traveling east on Third Street. As defendant neared the intersection of Third Street and Bandini Street he was traveling north of the center line of Third Street. On approaching the corner of Third Street and Bandini Street defendant caused his automobile to make a wide turn to the left, as though he were about to turn into Bandini Street to the south of Third Street, but on the easterly side thereof and to the east of the street-car track. He was traveling at a speed of about four or five miles an hour. The two

vehicles collided very close to the southeast corner of the intersection of the two streets, and plaintiff sustained injuries on which he bases this action.

Plaintiff's testimony relative to the accident includes the following: That he was struck where the curb would be on the southeast corner of the intersection and was traveling on the right or the south side of Third Street; that the automobile was about forty feet east of Bandini Street when he saw it commence to make a turn to the south; that it kept curving until the collision, and he was watching it make the turn; that the automobile was going slowly and he thought it was going to stop, but that it suddenly lunged ahead and struck him when he was passing in front of it; that upon entering the intersection he commenced to swerve slightly to the right at a point about seventy-five feet west of the tracks; that plaintiff was operating his motorcycle upon his right-hand side of the street and so far to the right that if a curb had been constructed he would have been on the curb. With reference to plaintiff's position, another witness testified: "You could not get over to the right any further because he was as far as he could go."

Plaintiff further testified that when he had gotten almost to the west intersecting line of Third Street and Bandini Street he noticed that the automobile commenced to turn to the left and when he reached the car track the automobile was the same distance from the point of the accident that plaintiff was, and while plaintiff was on the car track the automobile was traveling four or five miles an hour. What happened after that is shown by the following questions and answers: "Q. When you were on the railway track crossing did you notice as to what the automobile was doing? A. It was going pretty slow; I thought it was going to stop. The engine was racing and I thought they were stopping there and I had plenty of time to get by; so I kept on going and just as I got right in front of them he let go of his clutch and the car gave a lunge and hit me." Two eye-witnesses corroborated the last statement of plaintiff.

The witness J. E. File testified as follows: "Q. Did it [the automobile] change its speed at any time while you were noticing it? A. Very little, until it seemed just about the time it struck, then made a kind of jump. Q. Jumped forward? A. Yes."

The witness Mrs. Anna File testified as follows: "Q. Did you notice whether there was any difference in its speed from the first instant you saw it until it struck? A. Well, it seemed to kind of make a jump and then stopped; just a kind of start like, and then stopped instantly."

[1] Appellant's first point is, (a) plaintiff was guilty of contributory negligence and the motion for nonsuit should have been granted; (b) the court erred in refusing to instruct the jury to return a verdict in favor of defendant. The two points are discussed as one. Negligence is the want of ordinary care on the part of one of the parties to an action, and contributory negligence means the same thing as applied to the other party. Neither is of any consequence unless it proximately or directly produces the accident, and, of course, the rule of law in an action arising out of personal injuries is that where plaintiff is guilty of contributory negligence he cannot recover. The question whether plaintiff has been guilty of contributory negligence ordinarily is one exclusively for the jury. It is only when, there being no dispute as to the facts and reasonable men can reach but one conclusion—that of plaintiff's lack of ordinary care in the circumstances which contributed directly or proximately to the accident of which he complains—that the judge is warranted in deciding that fact in place of the jury and declaring therefrom as a matter of law that plaintiff shall not be permitted to recover damages. If reasonable men might differ as to whether or not the plaintiff did what an ordinarily prudent person would have done in the same or similar circumstances, then the judge is not justified in drawing the conclusion that because in his own mind the plaintiff was guilty of contributory negligence, all other reasonable persons must think likewise. A determination by the trial judge to the effect that a plaintiff has been guilty of contributory negligence must rest upon such a state of facts that not merely a bare majority of reasonable men will agree with his conclusion. It is immaterial whether the trial judge actually believes the evidence to be true or not; plaintiff's case must be taken absolutely at face value; he is entitled to every favorable inference fairly arising from the evidence produced by him; the motion is equivalent to a demurrer to the evidence, or an objection that, admitting all the evidence introduced to

be true and disregarding all inconsistencies therein, if any, the evidence is insufficient in law to entitle plaintiff to a judgment in his favor. It is only when reasonable men can draw but one inference, and that inference pointing unerringly to the negligence of the plaintiff, contributing directly or proximately to his own injury, that the law will step in and forbid a recovery. "It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury." (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 241 [116 Pac. 515], citing cases.)

[2] At a time when each of the parties to this action was several feet from the point of the accident plaintiff saw defendant start to turn toward him; neither plaintiff nor defendant was traveling at a high rate of speed, but defendant was doing an unlawful thing in making the turn as he did—that is, in turning into the left side of an intersecting street. At the time of the collision plaintiff was over as far as he could go to the right side of the street on which he was traveling; there was no escape in that direction. Viewed as at this time and not as it may have appeared to plaintiff at that time, plaintiff might have stopped his motorcycle and escaped injury, or he might have gone around to the rear of defendant's automobile with the same result; but there was no certainty that had he stopped, defendant would not have run him down; neither was there any certainty that had he violated the "law of the road" by attempting to pass defendant on the left, that defendant would not have also turned in that direction or stopped his automobile altogether and thus have produced a collision. Plaintiff and defendant were each facing a serious dilemma. The indications were that, according to plaintiff's testimony, the engine of defendant's auto was racing and defendant was about to stop his automobile in order that plaintiff, who was traveling at a much faster rate of speed than defendant, might safely pass in front of defendant; and plaintiff, acting upon such appearances, attempted to carry out such plan. The testimony of plaintiff and that of two other wit-

nesses is that at that instant defendant's auto suddenly made a "lunge" or a "jump" and struck plaintiff's motorcycle, thus causing the injury of which plaintiff complains.

It is impossible to say absolutely that plaintiff was negligent or careless. The evidence presented a question of fact which was at least fairly debatable, that is, such a question that in its answer reasonable men might disagree; hence there was no error committed by the court, either in denying counsel's motion for nonsuit or in denying the motion for a directed verdict in favor of defendant.

Appellant next complains of two instructions given by the court. in the first of which the jury was in effect told that if the plaintiff was in a place of safety and discovered the defendant turning to the left, cutting the corner, and after discovering the defendant operating his automobile in the manner stated, speeded up his motorcycle in an effort to get ahead of the defendant's automobile as it was cutting the corner, then he was guilty of negligence; and in the second instruction, in practically the same circumstances, the jury was instructed that if he "took the chance of speeding up his motorcycle in an effort to pass in front of defendant's automobile at the corner of the intersection, then it is for you to determine under all the circumstances whether he was guilty of negligence or not."

Appellant's contention is that these two instructions were misleading and inconsistent one with the other, in that by the first instruction the jury was led to believe that if plaintiff left a place of safety and "speeded up" his motorcycle in an effort to get ahead of defendant's auto and was injured thereby, such act constituted negligence, while by the second instruction the question of whether such an act amounted to negligence was left to the jury. But, in the first place, counsel for appellant says that the first instruction was in effect requested by himself, and the second instruction, which in substance was also requested by defendant, included the proposition as given by the court that if plaintiff "took the chance of speeding up his motorcycle, in an effort to pass in front of defendant's automobile at the corner of the intersection, then his acts in so doing were negligent," but that the court modified that instruction so as to leave the question of negligence to the jury and omitted from the instruction the possible question of plain-

tiff's contributory negligence arising from his knowledge of the fact that it had been a general custom for some time for vehicles to turn to the left and cut the corner at the intersection of Third and Bandini Streets in proceeding south from such intersection. Appellant's brief contains the further statement "that there is nowhere in the entire record any testimony or evidence whatever by the respondent that he 'speeded up' his motorcycle in an effort to get ahead of the automobile of appellant."

[3] The first instruction is altogether in defendant's favor; he is in no position to complain of it. The cases are numerous which hold that instructions given at the request of the party are not subject to his exception and, even though erroneous, cannot be taken advantage of on a motion for new trial. [4] While the general rule is that instructions should be based on the evidence and not on facts of which there is no evidence, where it appears that such an error was partly, if not entirely, caused by the party complaining, he can be afforded no relief; in other words, he should not be permitted to profit by his own wrong. It is a sound principle, as well as a most salutary one, that a party cannot be heard to complain of an error which he himself has been instrumental in bringing about. (*Missouri Pac. R. Co.* v. *Fox,* 60 Neb. 531 [83 N. W. 744], citing cases.) If there was no evidence as to plaintiff's "speeding up" his motorcycle, then no instruction covering that point should have been given; but where it appears that both such instructions upon that phase of the case were suggested by defendant, he should be estopped to claim any redress by reason of the fact that they were submitted to the jury. If such instructions were inconsistent one with the other, defendant was at least partly responsible therefor and he cannot be heard to complain on that account.

Complaint is also made of the following instruction: "But if a person, either plaintiff or defendant, is put in great peril by the negligence of the opposite party, of either doing an injury or of being injured, where immediate action is necessary to avoid it, he is not required to exercise all of that presence of mind and carefulness that are justly required of a careful and prudent man under ordinary circumstances; and the reasonableness of his effort to escape

injury, after discovery of the danger, is a question for the jury to determine, under all the circumstances of the case. And it is for them to determine under the circumstances, where plaintiff or defendant has been put in peril of being injured or of doing injury by the negligence of the other— you are to consider that in determining the question of negligence.'' It would appear that the instruction was as favorable to defendant as it was to plaintiff. But appellant contends that the giving of this instruction was erroneous for two reasons: first, that it did not exclude or negative the negligence of the respondent, if any, in placing himself in the dangerous situation; and, secondly, that it had no application to the case where respondent's own statements showed ''that he was familiar with the custom of using the east side of Bandini Street by vehicles going south thereon; that he saw the automobile for a distance of several blocks and watched it all the time it was making the turn; that he could have easily avoided any injury by slackening up his speed or slightly changing the course of his motorcycle; that nevertheless and in the very face of the moving and turning car he continued serenely on his way directly into the path of the automobile without making the slightest effort to avoid the collision.'' [5] With reference to the first of appellant's contentions, as well as to all other points, with the exception of one to be noticed directly, it is sufficient to point out that instructions must be considered as a whole, and it appears that all such points to which appellant directs attention were fully covered by other instructions given by the court. [6] As to that part of appellant's objection to the instruction with reference to the failure of the court to include the fact of knowledge on the part of plaintiff relating to the ''custom'' or, rather, practice, of automobile drivers using the wrong side of the street, no such practice could be binding on plaintiff so as to excuse defendant from violating the statute in that regard, provided that such act was the proximate cause of the accident. The evidence shows that plaintiff saw defendant in the act of violating the statute in that respect; so any question of practice by other automobile drivers would be immaterial, and as the attention of the jury was directed generally by other instructions to all acts and conduct by plaintiff, as

well as by defendant, at the time of or immediately prior to the accident, it would be unnecessary to mention this particular act, even though it might be considered of some importance to defendant's case. Counsel also argue that the "doctrine of imminent peril" had no application; but, as has already appeared in the matter of the motion for nonsuit, circumstances in connection with the accident were such that the court could not rightfully decide that contributory negligence on the part of plaintiff was shown. The question of the negligence of plaintiff was left with the jury to determine; also the question of whether or not plaintiff was put in great peril by the negligence of defendant; and then followed in the instruction the rule of law that where immediate action on the part of plaintiff becomes necessary to avoid injury he is not required to exercise that presence of mind and carefulness that is justly required of a careful and prudent man under ordinary circumstances. As has been elsewhere adverted to, the evidence shows that plaintiff found himself in a dangerous situation—whether through his own negligence or not was a question for the jury to decide. [7] He had little, if any, time to consider what action on his part would be most likely to safely extricate himself therefrom, and, as is succinctly stated in the instruction to which objection is made, the law does not demand that he make the best possible choice. "It is always easy after an accident to see how it could be avoided; but a man's duty before the calamity is not measured by such *ex post facto* information." The jury was particularly instructed in substance that if at the time plaintiff was thus hastily called upon to determine his course of action he did what a reasonably prudent and careful person might have done in the same or similar circumstances, he did all that reasonably could be expected of him.

The court having noticed all the alleged errors occurring on the trial of this case and it appearing that none of them has resulted prejudicially to the defendant, it is ordered that the judgment herein be and the same is hereby affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 12, 1923.

All the Justices concurred.